# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA STEWART, ) | |
| ) | Civil Action No. 2:17-cv-770 |
| Plaintiff, ) | |
| ) | United States Magistrate Judge |
| v. ) | Cynthia Reed Eddy |
| ) | |
| ) | |
| TED DALLAS, in his official capacity; ) | |
| ROBERT SNYDER, in his individual ) | |
| Capacity; JOHN DOE #1, in his or her ) | |
| individual capacity; JOHN DOE #2, in ) | |
| his or her individual capacity; ) | |
| JOHN DOE #3, in his or her individual ) | |
| Capacity; MHM SOLUTIONS, INC.; and ) | |
| MHM SERVICES, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION [1]

This is a civil rights action brought under 42 U.S.C. § 1983 by plaintiff Joshua Stewart against defendants Ted Dallas, Robert Snyder, John Does #1-3, MHM Solutions, Inc., and MHM Services, Inc. The underlying incident occurred March 19, 2015, at Torrance State Hospital ("Torrance") where Mr. Stewart was civilly committed. On that date a fellow patient, Richard E. Adams, physically attacked Mr. Stewart and injured him.

Mr. Stewart initially filed a Writ in the Court of Common Pleas of Westmoreland County, Pennsylvania in March, 2017, followed by a Complaint on March 24, 2017. On June 12, 2017, MHM Solutions, Inc., and MHM Services, Inc. timely removed the case to this court on October

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 12, 13, and 14.

13, 2014, pursuant to 28 U.S.C. § 1441. (ECF No. 1). In response to Defendants' motions to dismiss the Complaint, Mr. Stewart filed an Amended Complaint on September 7, 2017. (ECF No. 15). Pending before the Court is a motion to dismiss the Amended Complaint filed by the Ted Dallas, in his official capacity, and Robert Snyder, in his individual capacity (collectively the "Commonwealth Defendants") (ECF No. 21), and a motion to dismiss the Amended Complaint filed by MHM Solutions, Inc. and MHM Services, Inc. (collectively "the Medical Defendants") (ECF No. 19).

For the reasons set forth below the Commonwealth Defendants' motion will be granted in part and denied in part, and the Medical Defendants' motion will be denied.

I. **Factual Background**

Plaintiff Joshua Stewart is an adult individual who has been civilly committed to Torrance State Hospital since approximately 2001. Am. Compl. ¶¶ 2, 23. Non-party Richard E. Adams who committed the physical assault is a fellow patient housed at Torrance. Am. Compl. ¶ 1. Ted Dallas is sued in his official capacity as the Secretary of the Pennsylvania Department of Human Services. Am. Compl. ¶ 3. Robert Snyder is sued in his individual capacity as CEO of Torrance State Hospital. Am. Compl. ¶ 4. MHM Solutions, Inc. is a division of MHM Services, Inc., both of which are responsible for the provision of medical care at Torrance. Am. Compl. ¶¶ 7-9. John Doe #1 was a nurse manager employed by the Medical Defendants and was on duty at the time of the assault. Am. Compl. ¶ 11. John Doe #2 was also employed by the Medical Defendants and was Mr. Adams' primary mental health treatment provider at the time of the incident. Am. Compl. ¶¶ 13, 33. John Doe # 3 was the Chief Operating Officer of Torrance. Am. Compl. ¶ 6.

Mr. Stewart has resided on Greizman Ward 3 at Torrance since he was civilly committed

in 2001. Am. Compl. ¶¶ 23-25. Mr. Adams was admitted to Torrance for a variety of reasons, which included a history of biting. Am. Compl. ¶ 32. On March 19, 2015, Mr. Stewart and Mr. Adams were placed together in a "mixed, inadequately staffed, and inadequately secured setting," where Mr. Adams assaulted Mr. Stewart biting off Mr. Stewart's left ear. Am. Compl. ¶¶ 37-38.

Mr. Stewart alleges that it was reasonably foreseeable that Mr. Adams would assault Mr. Stewart. Am. Compl. ¶ 37. He supports this allegation in two ways. First, Mr. Stewart points to a general knowledge that Defendants were aware of chronic understaffing at the Hospital and a lack of staff accountability. Am. Compl. ¶ 36. This allegation is supported by reference to a 2012 inspector general special performance audit report that noted deficiencies in management and supervision of staff at Torrance. Am. Compl. ¶ 34. A 2016 follow-up audit report noted, among other things, staffing shortages, excessive overtime, which both caused potential concerns with patient care. Am. Compl. ¶ 35. As a remedy, Defendants agreed to explore ways to reduce one-to-one and two-to-one observations. Am. Compl. ¶ 35. Mr. Stewart also alleges that it was specifically reasonably foreseeable that Mr. Adams would assault Mr. Stewart due to Mr. Adams' admitting diagnosis and his past history of biting and physically assaulting others. Am. Compl. ¶43, 46.

Mr. Stewart alleges that the Defendants violated his Fourteenth Amendment rights under the United States Constitution.

The Commonwealth Defendants and the Medical Defendants both move to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (*citing Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

## III. Discussion

Ted Dallas moves to dismiss the claim asserted against him in his official capacity as he is not a "person" within the meaning of Section 1983 and the claim is barred by the Eleventh

Amendment. The Commonwealth Defendants move to dismiss the Amended Complaint arguing that Mr. Stewart has failed to allege sufficient personal involvement of each of them to maintain a claim against them individually. Finally, the Medical Defendants move to dismiss the Amended Complaint arguing that the claim cannot be maintained pursuant to a theory of *respondeat superior*, and that Mr. Stewart has not alleged sufficient facts to support a viable claim based on an official policy or custom of the Medical Defendants.

**A. Ted Dallas in his Official Capacity**

Mr. Stewart implicitly concedes that he cannot maintain his action against Ted Dallas in his official capacity by arguing that he is able to proceed against Mr. Dallas in his individual capacity. Pl. Br. Opp. 4-5 (noting that state officials sued in their individual capacities are "persons" and that Eleventh Amendment does not bar suits against officials for their individual acts) (ECF No. 25). Mr. Stewart summarily concludes that he has plead facts sufficient to maintain a suit against Mr. Dallas in his *official* capacity but has cited no legal authority to support this conclusion. To the contrary, the Supreme Court of the United States has made it clear that state officials "sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). Conversely, the Supreme Court explained that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer*, 502 U.S. at 31. Accordingly, Mr. Snyder's motion to dismiss the Amended Complaint as asserted against him in his official capacity will be granted.

Mr. Stewart argues that although he named Mr. Dallas as being sued in his official capacity only in the caption of his Amended Complaint, he has plead sufficient facts to assert a claim against

5

him in his individual capacity and implicitly seeks leave to amend the caption of the Amended Complaint. Pl. Br. Opp. 5, n.1. Mr. Dallas has not opposed the suggestion to amend the caption but does argue that Mr. Stewart has failed to allege sufficient facts to state a claim against Mr. Dallas in his individual capacity. The Court addresses that argument next.

### B. Commonwealth Defendants

The Commonwealth Defendants argue that Mr. Stewart has failed to allege sufficient personal involvement on behalf of Mr. Dallas or Mr. Snyder to maintain a Fourteenth Amendment claim against them in their individual capacities.[2] "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). A supervisor may be liable for unconstitutional acts by his or her subordinates in two general ways: (1) the supervisor, " 'with deliberate indifference to the consequences, established and maintained a policy, practice or custody which directly caused [the] constitutional harm' "; or (2) the supervisor " 'participated in violating the plaintiff's rights, directed others to violate them,

---

[2] The Commonwealth Defendants mistakenly refer to Mr. Stewart's cause of action as arising under the Eighth Amendment. However, Mr. Stewart properly brought his claims pursuant to the Fourteenth Amendment. An individual who is civilly committed "enjoys due process protections under the Fourteenth Amendment." *Banda v. Adams*, 674 Fed.Appx. 181, 184 (3d Cir. 2017) (citing *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). However, because the Commonwealth Defendants do not argue that Mr. Stewart has failed to allege deliberate indifference, because at least the same protections apply under the Eighth Amendment to civilly committed individuals, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and because personal involvement is a prerequisite to all section 1983 claims, the Commonwealth's error is immaterial.

or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004), *rev'd on other grounds sub nom. Taylor v. Barkes*, ––– U.S. ––––, 135 S. Ct. 2042 (2015)).

Mr. Stewart argues that he is seeking to hold the Commonwealth Defendants liable on a theory of supervisory liability. The United States Court of Appeals for the Third Circuit has affirmed that after *Iqbal*, a claim for supervisory liability may be imposed where "a state official, by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury *does* occur." *Barkes*, 766 F.3d at 320 (emphasis in original). "Liability in such a situation is, as *Iqbal* requires, imposed not vicariously but based on the supervisor's own misconduct, because to exhibit deliberate indifference to such a situation is a culpable mental state under the Eighth Amendment." *Id.* Mr. Stewart's allegations are consistent with the Third Circuit's formulation.

Mr. Stewart alleges that there were two separate deficient circumstances prior to Mr. Adams attacking him that were known to Defendants: (i) staffing and management problems that created an unreasonable risk of constitutional injury to patients; and (ii) a patient with a medical diagnosis and history of physical attacks that created an unreasonable risk that he would harm another patient. Mr. Stewart alleges that Defendants were deliberately indifferent to the deficient circumstances and the Defendants failed to act to correct the deficiencies or otherwise act to protect the patients housed at Torrance.

The Amended Complaint states that Mr. Dallas was "personally involved in the incident"

7

by virtue of being "responsible for the administration" of Torrance, and for the "health, safety, and treatment of patients within" Torrance. Am. Compl. ¶ 3a. The Amended Complaint further alleges personal involvement of Mr. Dallas by virtue of being "on notice as to Torrance's systemic failures since at least 2012," and that he has "failed to implement system wide changes in areas including but not limited to hiring practices, patient care, security, and training sufficient to prevent incidents such as the assault giving rise to the instant suit." Am. Compl. ¶ 3b.

Similarly, Mr. Stewart alleges the personal involvement of Mr. Snyder based on his alleged "control and supervision of all medical personnel, and other employees at Torrance"; "control and supervision of all patients", including their health, safety, and medical treatment. Am. Compl. ¶¶ 5a & 5b. The Amended Complaint also alleges that Mr. Snyder was responsible for specific Hospital policies designed to ensure the health and safety of patients, which included oversight of all medical staff. Am. Compl. ¶ 5c.

As to both Commonwealth Defendants Mr. Stewart alleges that they were specifically aware of Mr. Adams diagnosis upon admittance to Torrance, and that he had a history of physical assaults and of biting. Am. Compl. ¶¶ 32, 43, 46. Mr. Stewart's Amended Complaint also relies in large part on allegations that the Commonwealth Defendants were put on notice through the 2012 audit report that Torrance had chronic understaffing, deficient oversight of medical personnel, and other personnel-related deficiencies. Am. Compl. ¶¶ 34, 36, 37. Despite this knowledge, Mr. Stewart alleges that the Commonwealth Defendants failed to adopt and implement adequate procedures to address the deficiencies, either of assessing patients for risk of harm to others, or to impose adequate staffing or proper monitoring procedures to address the deficiencies outlined in the audit report. Am. Compl. ¶¶ 46, 48.

At this early stage of the litigation the Court finds that Mr. Stewart has sufficiently alleged facts to survive a motion to dismiss. The Court notes that the Commonwealth Defendants do not specifically address Mr. Stewart's allegations that they were deliberately indifferent to a known risk of harm to patients as a result of the information provided to them in the 2012 audit report. The deliberate indifference manifested in the form of a failure to take appropriate action to correct the deficiencies identified in the audit report. The Commonwealth Defendants are correct that a mere hypothesis based solely on supervisory authority is insufficient to hold a supervisor liable. *See Evancho*, 423 F.3d at 354. Mr. Stewart, however, has plausibly alleged that both Commonwealth Defendants would not only have knowledge of the audit reports prior to the violation, but are actually charged with the task of implementing policies and providing direct and oversight supervision of the specific areas identified in the audit reports. Thus, the allegations are more than a mere hypothesis based solely on the position of the defendant. As indicated above, Mr. Stewart relies heavily on the audit report as showing that circumstances were so deficient that they created an unreasonable risk that a constitutional injury was likely to occur. As discovery proceeds it may be that there is no connection between the audit report information and the injury to Mr. Stewart, but it is too early in the litigation to dismiss the claims against the Commonwealth. Accordingly, the Commonwealth Defendants' motion will be denied.

Based on the Court's ruling on the liability of the Commonwealth Defendants in their individual capacity, as well as the ruling to dismiss the Amended Complaint against Mr. Dallas in his official capacity, the Court will order the Clerk of Court to amend the caption so that Ted Dallas is sued in his individual capacity only.

## C. Medical Defendants

The Medical Defendants similarly argue that Mr. Stewart has failed to sufficiently allege that they were personally involved so as to maintain a Fourteenth Amendment claim against them.[3] The Medical Defendants are contracted health care providers and may be held liable if it is alleged that they had a relevant policy or custom that caused the constitutional violation. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

Mr. Stewart alleges that the Medical Defendants "represented the legal authority and official policy of Torrance as to the medical and mental health care of patients" and he also alleges a variety of the Medical Defendants' contractual and reporting duties. Am. Compl. ¶ 10. He further alleges that at the time of the incident "Defendants knew or should have known that the chronic understaffing, lack of staff accountability, and related institutional practices could and likely would have detrimental effect on patients including Plaintiff." Am. Compl. ¶ 36. The Amended Complaint alleges that "there were extensive policies established by the Commonwealth of Pennsylvania in place at Torrance that directed how to classify, track, evaluate, treat, and monitor patients like Plaintiff and Adams." Am. Compl. ¶ 39. Mr. Stewart alleges that all "Defendants failed to adhere to said standards." Am. Compl. ¶ 40. In addition, he alleges that Defendants were aware of "challenges in providing appropriate supervision and restrictions in light of the chronic staffing shortages at Torrance." Am. Compl. 47. The Amended Complaint also

---

[3] The Medical Defendants also argued for dismissal of the claim based on *respondeat superior*. As noted, "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207(3d Cir.1988). This argument is moot as Mr. Stewart confirmed that he is not seeking to hold the Medical Defendants liable based on a theory of *respondeat superior*. Pl. Br. Opp. to MHM 5 (ECF No. 26).

alleges that Defendants failed to address the chronic understaffing or otherwise failed to adopt policies or procedures to address the shortcomings identified in the audit report. Am. Compl. ¶ 48.

The Medical Defendants argue that the allegations of the Amended Complaint are conclusory and that Mr. Stewart has failed to plead facts demonstrating their involvement in establishing policies and procedures. At this stage of the pleadings the Court disagrees and finds that the allegations are sufficient to survive the motion to dismiss. Mr. Stewart has sufficiently alleged facts to show that the Medical Defendants have "failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (citations and quotation marks omitted). The allegations of the Amended Complaint, while not extensive, are sufficient to support a plausible claim against the Medical Defendants based on a policy or custom which caused a constitutional violation. Accordingly, the motion will be denied.

## II. CONCLUSION

For the foregoing reasons the Court finds that the motion to dismiss filed by the Commonwealth Defendants will be granted as to Defendant Ted Dallas's motion to dismiss him as a defendant sued in his official capacity, and will be denied in all other respects. The caption of this action will be amended to reflect that Ted Dallas is sued in his individual capacity. The motion to dismiss filed by the Medical Defendants will be denied.

An appropriate Order will be entered.

Dated: November 22, 2017

                              BY THE COURT

                              <u>s/Cynthia Reed Eddy</u>
                              Cynthia Reed Eddy
                              United States Magistrate Judge